USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/14/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOAN SCOTT-MONCK,

                              Plaintiff,

-against-

MATRIX ABSENCE MANAGEMENT, INC.,

                              Defendant.

No. 19-cv-11798 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Plaintiff brings this *pro se* action under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 and the New York State Human Rights Law ("NYSHRL"), alleging that her former employer, Matrix Absence Management, Inc. ("Matrix"), discriminated against her because of her age and retaliated against her when she reported a superior's age-related comments about another employee to Human Resources. Presently before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10.) For the reasons that follow, Defendant's motion is GRANTED and Plaintiff's claims are dismissed without prejudice.

## BACKGROUND

    The facts in this section are taken from Plaintiff's Complaint (ECF No. 1), construed in the light most favorable to Plaintiff, and are presumed to be true for purposes of this motion.

**I.    Factual Allegations**

    Matrix, based in Hawthorne New York, handles various leave and absence claims—including short-term disability ("STD") and Family and Medical Leave Act ("FMLA") leave—for employers who are its clients. (Compl. ¶ 10.)

Plaintiff began working for Matrix as an Integrated Claims Examiner on or about April 1, 2008, when she was approximately 58 years old. (Compl. ¶¶ 11, 12.) At the time of her hiring, there were approximately 13 other employees who, like Plaintiff, had previously worked for Verizon, all of whom were over the age of 50. (Compl. ¶ 12.) In or about 2012, Plaintiff was promoted to Integrated Claims Supervisor, a role in which she supervised a team of Integrated Claims Examiners and partnered with National Account Managers and clients. (*Id.*) In December 2016 or January 2017, Matrix hired as Director of Operations Donn Eric Foster ("Foster"), who was in his thirties and whose duties included overseeing the FMLA group, of which Plaintiff was a part. (Compl. ¶¶ 13, 14.) At that time, Plaintiff reported to Operations Manager Toranzo, who in turn reported to Foster.

On or about September 28, 2017, Plaintiff overheard Foster on a telephone call in which Foster stated that Toranzo was an "ineffectual" manager, who "should retire," that he thought Toranzo would have retired after her husband's recent death but she had not and noted that he thought Toranzo was 70 or 71 years old. (Compl. ¶ 15.) Foster also stated that Toranzo would "take all of us with her." (*Id.*) Plaintiff "understood 'all of us' to mean a number of employees, all in their fifties, who joined Matrix after they left Verizon. She understood Foster to be saying that, not only should Toranzo retire, but that he would be glad if the rest of the former Verizon employees left Matrix when Toranzo left." (Compl. ¶ 16.)

Toranzo subsequently reported a claim of age discrimination to Human Resources. Human Resources interviewed Plaintiff about what she had overheard Foster saying on the telephone. (Compl. ¶ 17.) Foster knew that Plaintiff had reported his comments about Toranzo to Human Resources and told Human Resources that Plaintiff had "misconstrued" his age-based remarks. (Compl. ¶ 19.)

2

In the spring of 2018, while Foster was serving as Senior Director of Operations, Matrix posted for an Operations Manager who would report directly to Foster. (Compl. ¶ 20.) Plaintiff applied for the position. Four people applied, of whom Plaintiff was the oldest applicant "by far," and, although they had only posted for one position, Matrix promoted two other people into the position, one in her forties and one in her fifties. (Compl. ¶¶ 21-23, 25.) Plaintiff alleges that Foster was the senior decision-maker for the Operations Manager position and Foster did not want Plaintiff to have the position because she had previously reported his discriminatory age-based comments to Human Resources. (Compl. ¶¶ 24, 26.)

After the two new Operations Managers were installed, Toranzo was removed from her Operations Manager position and told she could work from home as a Senior Examiner (a demotion) or retire because she was no longer capable of handling the Operations Manager position. (Compl. ¶ 27.) Toranzo disagreed that she was no longer capable, noting that the Hawthorne office had been recognized as having the best performance in the administration of FMLA leave during her eight-year tenure as Operations Manager at the Hawthorne office. (Compl. ¶ 28.) Nonetheless, Toranzo decided to retire at the age of 70 and Plaintiff began reporting to Wilson, who had recently been hired by Foster as an Operations Manager. (Compl. ¶ 29.)

In July 2018, during a regularly scheduled meeting, Wilson told Plaintiff that her performance was fine and did not raise any issues. (Compl. ¶ 31.) Three days later Wilson told Plaintiff that she was being placed on a "Final Warning" and a 60-day "Performance Alignment Plan" or "PAP" because of alleged deficiencies in her work. (Compl. ¶ 30.) Plaintiff alleges that the Final Warning and PAP were driven by Foster in further retaliation for Plaintiff having reported the content of his age-based telephone call to Human Resources and to lay the foundation for Matrix to terminate her. (Compl. ¶¶ 32, 33, 38.) Plaintiff further alleges that the Final Warning

contains various inaccuracies and falsehoods including a specious allegation that audits for April 2017 to 2018 were falsified.

On August 24, 2018, Plaintiff made a verbal complaint to the Ethics Hotline in which she reported the unjustified Final Warning and PAP and her suspicion that these actions were retaliation for her reports to Human Resources regarding Foster's age-based comments. (Compl. ¶¶ 32, 33, 38.)

On September 13, 2018, Plaintiff successfully completed the PAP. (Compl. ¶ 40.)

On January 7, 2019, Plaintiff was terminated. (Compl. ¶ 41.) Matrix informed Plaintiff that she was being terminated because of a "debacle" in which an examiner on Plaintiff's team was not reporting certain leave for a particular client as delineated in that client's policies with Matrix, which Plaintiff had not caught or corrected. (Compl. ¶ 42.) Plaintiff disputes whether the alleged error was made, contends that even if it was made, there was no damage to the client that could not have easily been corrected, and alleges that her termination was "not consistent with Matrix policy, which had been to explain the financial damages to the client, when such damages occurred." (Compl. ¶¶ 43-44.)

Plaintiff alleges that she was replaced by a younger person. (Compl. ¶ 47.)

II.   **Procedural History**

Plaintiff filed a Discrimination Complaint with the New York State Division of Human Rights ("SDHR") on or about January 4, 2019, which she amended on February 11, 2019, alleging that Matrix and Foster violated the NYSHRL. (Compl. ¶ 7.) Plaintiff received an annulment letter dated February 15, 2019. (*Id.*) The filings with SDHR were concurrently filed with the Equal Employment Opportunity Commission ("EOC") (No. 16G-2019- 01392) and the EEOC issued a Notice of Right to Sue letter dated September 30, 2019. (Compl. ¶ 8.)

Plaintiff filed this action pro se on December 26, 2019. (ECF No. 1.) Defendant waived service (ECF No. 4) and sought leave to file a motion to dismiss (ECF No. 6). The Court granted Defendant leave to file its motion (ECF No. 9), which is now before the Court (ECF No. 10; *see also* ECF Nos. 11, 12, 14), along with Plaintiff's memorandum in opposition (ECF No. 13).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. That said, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556 (internal quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the

5

complaint, including documents that a pro se litigant attaches to his opposition papers, statements by the plaintiff submitted in response to a defendant's request for a pre-motion conference, and documents that the plaintiff either possessed or knew about and upon which he or she relied in bringing the suit." *Gayot v. Perez*, No. 16-CV-8871 (KMK), 2018 WL 6725331, at *4 (S.D.N.Y. Dec. 21, 2018) (internal quotation marks, alterations, and citations omitted). In other words, the Court may "consider factual allegations made by a *pro se* party in [her] papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

A court must read a *pro se* complaint liberally, interpreting it "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010). A motion to dismiss a *pro se* complaint should only be granted if the complaint raises no plausible right to relief under any set of facts the plaintiff could plausibly prove. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nonetheless, a *pro se* plaintiff's complaint must plausibly set out entitlement to relief with sufficient factual allegations. *Jackson*, 709 F. Supp. 2d at 224. A court liberally construing a *pro se* complaint is not required to re-write it or ignore the lack of an element essential to an entitlement to relief. *Geldzahler v. N.Y. Medical Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

**I.      Discrimination Claims**

Defendant avers that Plaintiff's age discrimination claims fail under both the ADEA and the NYSHRL because (1) Plaintiff's allegations regarding discriminatory intent are conclusory and the mere allegation that Plaintiff was replaced by a younger person does not in and of itself raise an inference of discriminatory intent; (2) Plaintiff fails to allege that she was qualified for her job and/or satisfactorily performing her job at the time of her termination; and (3) Foster's

6

allegedly ageist comment was nothing more than a stray remark with no causal nexus to any adverse action. The Court agrees that Plaintiff has failed to state a plausible discrimination claim.

### A. Legal Standard

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection covers "individuals who are at least 40 years of age." *Id.* § 631(a). To state an ADEA discrimination claim, a plaintiff must allege that (1) he or she was "within the protected age group," (2) he or she was "qualified for the position," (3) he or she "experienced adverse employment action," and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Green v. Town of E. Haven*, 952 F.3d 394, 403 (2d Cir. 2020) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). On a motion to dismiss, a court "need determine only 'whether the allegations in the complaint give plausible support to the reduced *prima facie* requirements that arise . . . in the initial phase of a litigation." *Miller v. Dep't of Educ.*, No. 17-CV-594 (JPO), 2018 WL 1468703, at *2 (S.D.N.Y. Mar. 23, 2018) (quoting *Dressler v. City Sch. Dist. of N.Y.C.*, No. 15-cv-3696 (JPO), 2016 WL 4367967, at *3 (S.D.N.Y. Aug. 15, 2016)). Discrimination "claims under the NYSHRL are analyzed under the same legal framework as ADEA claims"

An adverse employment action occurs if an employee "endures a 'materially adverse change' in the terms and conditions of employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000)). To be materially adverse, "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Woolfolk v. N.Y.C. Dep't of Educ.*,

No. 19-CV-3706 (RA), 2020 WL 1285835, at *6 (S.D.N.Y. Mar. 18, 2020) (quoting *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018)). "A change that is 'materially adverse' could consist of, *inter alia*, 'a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Zoulas*, 400 F. Supp. 3d at 53 (quoting *Kassner*, 496 F.3d at 238).

"Isolated comments, while potentially offensive, do not lead to an inference of discriminatory intent." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017). The Second Circuit "generally looks to four factors to determine whether a remark made in the workplace is probative of discriminatory motive: '(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).'" *Shaw v. McDonald*, 715 F. App'x 60, 61 (2d Cir. 2018) (quoting *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)).

**B. Application**

Plaintiff alleges that Foster discriminated against her because of her age and, consequently, she suffered three adverse employment actions: (1) not being selected out of four candidates for a promotion; (2) being placed on a PAP; and (3) termination.

Construed liberally as the Court is required to do where Plaintiff proceeds pro se, Plaintiff avers that the discriminatory intent can be inferred from (1) Foster's allegedly ageist comment regarding Toranzo and (2) the allegedly discriminatory termination of Toranzo. Neither of these factual allegations plausibly allege that any adverse actions taken against Plaintiff were taken

discriminatorily because of her age. These factual allegations fail to raise a plausible inference of discrimination for at least three reason.

*First*, Foster's allegedly ageist comment about Toranzo on September 28, 2017 is too distant in time from the alleged adverse actions that occurred at least five months afterwards. As alleged, these adverse actions included: (1) Plaintiff was not selected for a promotion in "spring 2018," (2) she was put on a PAP in July 2018, and (3) she was terminated in January 2019. Adverse actions occurring five to sixteen months after at-issue statements are insufficient to plausibly support an inference of discrimination. *See, e.g.*, *Sethi v. Narod,* 12 F.Supp.3d 505, 540 (E.D.N.Y. 2014) ("District courts in this Circuit have found that a three-month lapse between alleged discriminatory statements and an adverse employee action is too long a gap to find the remark probative of discrimination."); *cf. Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("Comments about another employee's age, removed from any context suggesting that they influenced decisions regarding [a plaintiff's] own employment, do not suffice to create a genuine issue of fact as to whether age was the but-for cause of [his] termination.")*; contra Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (holding that plaintiff whose new boss said to the plaintiff six week prior to plaintiff's termination "Burt, you're 71 years of age, how long do you expect to work? What if you're hit by a bus?" has made a prima face case because the comment by the boss referenced the plaintiff's "age in the context of disputing his claimed job duties" but failed to demonstrate the employer's nondiscriminatory reason for terminating plaintiff was pretextual).

*Second*, the alleged circumstances regarding a third party's termination (*i.e.*, Toranzo's) does not raise a plausible inference that Plaintiff suffered adverse actions because of her age. *See, e.g.*, *Gertskis v. New York City Dep't of Health & Mental Hygiene*, No. 07 CIV. 2235 (TPG), 2008

9

WL 4449285, at *1 (S.D.N.Y. Sept. 29, 2008) ("The allegation of what was said by another employee as to discrimination by Wright—an unsubstantiated, double-hearsay accusation—does not suffice to create a plausible inference of discriminatory intent." (quotation marks omitted)).

*Third*, even assuming that Foster was the relevant decisionmaker for both the failure to promote and termination, insofar as Plaintiff alleges that Matrix promoted younger applicants over her or that she was replaced by someone younger, such a cursory allegation, standing alone, is insufficient to give rise to an inference of discrimination. *See, e.g.*, *Nance v. City of New York*, No. 09-CV-2786 ENV VVP, 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011) ("an allegation that plaintiff was replaced by a younger employee is not sufficient, without more, to survive a motion to dismiss").

Accordingly, the Court must dismiss Plaintiff's age discrimination claims.

## II.   Retaliation Claims

Defendant avers that Plaintiff's retaliation claims under the ADEA and NYSHRL fail because Plaintiff fails to allege a causal connection between her alleged protected activity and allegedly adverse actions, especially where she admits that at the time of her termination her job performance had been unsatisfactory. The Court agrees with the Defendant.

### A.  Legal Standard

To make a *prima facie* case of retaliation, a plaintiff must allege "(1) the employee was engaged in an activity protected by [the applicable statute], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Furk v. Orange-Ulster BOCES*, No. 15-cv-6594 (NSR), 2016 WL 6560408, at *3 (S.D.N.Y. Nov. 2, 2016) (quoting *Moore*, 2016 WL 825001 at *4). At the pleading stage, the allegations of retaliation "need only

give plausible support to the reduced prima facie requirements." *Littlejohn*, 795 F.3d at 316. In other words, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *see Dipinto v. Westchester Cnty.*, No. 18-CV-793 (KMK), 2019 WL 4142493 at *8 (S.D.N.Y. Aug. 30, 2019) ("The NYSHRL contains a similar provision against retaliation . . . and is governed by the same standard.")

### B. Application

Plaintiff alleges that she engaged in two protected activities—(1) speaking with HR about the allegedly ageist comment she heard Foster make about another employee, and (2) calling the ethics hotline to report that her PAP was unfair—and three adverse actions (A) denial of a promotion; (B) being placed on a PAP, and (C) termination.

As to the call to the ethics hotline, Plaintiff does not allege that anyone involved in the termination decision was aware of this report. *See, e.g.*, *Watkins v. First Student, Inc.*, 17-CV-1519 (CS), 2018 WL 1135480, at * 15 (S.D.N.Y. Feb. 28, 2018) (dismissing the plaintiff's complaint where he "fail[ed] to allege that Defendant knew of her EEOC complaint, and if so, when"); *Belizaire v. RAV Invest. and Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 351-52 (S.D.N.Y. 2014) ("To constitute protected activity, the plaintiff's conduct must have put the employer on notice that the plaintiff believed that discrimination was occurring.") (internal quotation marks omitted).

While Plaintiff alleges that Foster was aware that she reported his allegedly ageist comment in September 2017 to HR because he disputed it, as stated above, she fails to plausibly allege a nexus between this protected activity and any of the adverse actions. Plaintiff does not specify when the conversations with HR took place. Additionally, while she alleges that Matrix posted for

11

the position for which she applied in the Spring of 2018, she does not specify when she was denied the position. The PAP was issued in or around July 2018 and Plaintiff terminated in January 2019. In other words, a number of months passed between Plaintiff's overhearing and presumably reporting to HR Foster's allegedly ageist comment, the better part of a year passed before she was put on the PAP, and she was not terminated until months after that point. Plaintiff has failed to plead facts from which the Court can infer retaliatory motive. *See Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) ("The time lapses between Brown's protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations.")

Accordingly, the Court must dismiss the retaliation claims.

### III. Leave to Amend

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted). When exercising this discretion, courts consider many factors including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility. *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, particularly in light of Plaintiff's pro se status, the Court grants Plaintiff leave to file an amended complaint. Notwithstanding the above explained deficiencies, Plaintiff could potentially plead facts that cure her Complaint's various defects. Although Plaintiff certainly has

high hurdles to overcome, leave to amend in this case would not necessarily be futile at this juncture. Furthermore, as this case is still in its infancy, there would be minimal prejudice to Defendants in permitting Plaintiff to amend.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is GRANTED. The Court, however, grants Plaintiff leave to file an amended complaint in accordance with this Opinion and Order. If she chooses to do so, Plaintiff has until October 15, 2021 to file her amended complaint. Failure to file an amended complaint within the time allowed, and without good cause, will result in the dismissal of Plaintiff's claims with prejudice. If Plaintiff files an amended complaint, Defendant shall answer or seek leave to file a non-duplicative motion on or before November 5, 2021.

The Clerk of Court is directed to (1) terminate the motion at ECF No. 10, (2) mail a copy of this opinion and order to pro se Plaintiff at the address on ECF, and (3) show service on the docket.

Dated: September 14, 2021  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge