UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOAN SCOTT-MONCK,

                              Plaintiff,

      -against-

MATRIX ABSENCE MANAGEMENT, INC.,

                              Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  __07/22/2022__

No. 19 Civ. 11798 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff commenced this action, proceeding *pro se*, under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634, and the New York State Human Rights Law ("NYSHRL"), alleging that her former employer, Defendant Matrix Absence Management, Inc., discriminated against her based on her age and retaliated against her when she reported a superior's age-related comments about another employee to Human Resources. Presently before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 25.) For the reasons that follow, the Court GRANTS Defendant's motion.

## BACKGROUND

The facts in this section are taken from the Amended Complaint (ECF No. 16), construed in the light most favorable to Plaintiff, and are presumed to be true for purposes of this motion.

### I.   Factual Background

Defendant, a company based in Hawthorne New York, handles various leave and absence claims—including short-term disability ("STD") and Family and Medical Leave Act ("FMLA") leave—for employers who are its clients. (Am. Compl. ¶ 14.)

Plaintiff began working for Defendant as an Integrated Claims Examiner on April 1, 2008, when she was approximately 58 years old. (*Id.* ¶¶ 15, 17.) At the time of her hiring, there were approximately 13 other employees who, like Plaintiff, had previously worked for Verizon, all of whom were over the age of 50. (*Id.* ¶ 17.) In 2012, Plaintiff became an Integrated Claims Supervisor, a role in which she supervised a team of Integrated Claims Examiners and partnered with National Account Managers and clients. (*Id.*) In either December 2016 or January 2017, Defendant hired as Director of Operations Donn Eric Foster, who was in his thirties and whose duties included overseeing the FMLA group, of which Plaintiff was a part. (*Id.* ¶ 18.) At that time, Plaintiff was 66 years old and reported to Operations Manager Patricia Toranzo, who in turn reported to Foster. (*Id.* ¶ 19.)

A.    *Plaintiff allegedly overhears Foster make ageist comments about Toranzo*

On September 28, 2017, Plaintiff overheard Foster on a telephone call in which Foster stated that Toranzo was an "ineffectual" manager who "should retire," and that he thought Toranzo would have retired after her husband's recent death but she had not. (*Id.* ¶ 20.) Foster said that he thought Toranzo was 70 or 71 years old. (*Id.*) He also said that Toranzo would "take all of us with her" or words to that effect, and that "the office would survive." (*Id.*) Plaintiff "understood 'all of us' to mean a number of employees, all in their fifties, who joined Defendant after they left Verizon. (*Id.* ¶ 21.) She understood Foster to be saying that, not only should Toranzo retire, "but that he would be glad if the rest of the former Verizon employees left [Defendant] when Toranzo left." (*Id.*)

B.    *Plaintiff tells Toranzo about Foster's comments; Toranzo reports them to HR*

Plaintiff was troubled and concerned about Foster's comments and considered them discriminatory, for which she spoke with Toranzo about her concerns. (*Id.* ¶ 22.) Toranzo subsequently reported a claim of age discrimination to Human Resources ("HR") based on what

Plaintiff had told her. (*Id.* ¶ 23.) HR later interviewed Plaintiff about what she had overheard Foster saying on the telephone. (*Id.* ¶ 24.) Plaintiff claims that HR never advised her of a final outcome, and that the HR Director in one undated instance told her "you've already had your career . . . ." (*Id.*) Foster knew that HR had interviewed Plaintiff concerning his comments about Toranzo, and he told HR that Plaintiff had "misconstrued" his remarks. (*Id.* ¶ 26.)

C.    *Plaintiff applies for an Operations Manager position, but she does not get it*

In the spring of 2018, after Foster became Senior Director of Operations, Defendant posted a vacancy for an Operations Manager position who would report directly to Foster. (*Id.* ¶ 27.) Plaintiff applied for the Operations Manager position, for which she claims she was "well-qualified." (*Id.* ¶ 28.) Out of the four people who applied, Plaintiff, at the time 68 years old, was "by far" the oldest applicant. (*Id.* ¶ 30.) Although it had only posted the vacancy for one position, Defendant promoted two people into the position, one in her forties, Jeanine Fleming, and one in her fifties, Kim Wilson. (*Id.* ¶¶ 29, 32.)

Plaintiff claims that Foster "had significant input as to who would receive the Operations Manager position since this person would be reporting directly to him." (*Id.* ¶ 31.) Plaintiff further claims that Foster did not want Plaintiff to have the position "because she had previously reported his discriminatory age-based comments to Human Resources." (*Id.* ¶ 33.)

D.    *Defendant demotes Toranzo to Senior Examiner and she later retires*

After the two new Operations Managers were installed, in February or March 2018, Defendant removed Toranzo from her Operations Manager position and told her she could either work from home as a Senior Examiner (a demotion) or retire because she was no longer capable of handling the Operations Manager position. (*Id.* ¶ 34.) Toranzo disagreed that she was no longer capable, noting that the Hawthorne office had been recognized as having the best performance in the administration of FMLA leave during her eight-year tenure as Operations Manager at the

Hawthorne office. (*Id.* ¶ 35.) Nonetheless, Toranzo decided to retire at the age of 70 and Plaintiff began directly reporting to Wilson. (*Id.* ¶ 36.)

     E.    *Defendant places Plaintiff on a Final Warning and on a PAP driven by Foster*

On July 10, 2018, during a regularly scheduled one-on-one meeting, Wilson told Plaintiff that her performance was satisfactory and did not raise any issues. (*Id.* ¶ 37.) But three days later, Wilson called Plaintiff into her office and told her that she was being placed on a "Final Warning" and a 60-day "Performance Alignment Plan" or "PAP" because of alleged deficiencies in her work. (*Id.* ¶ 38.)

Plaintiff claims that the Final Warning and PAP were driven by Foster in further retaliation for Plaintiff having reported to HR his alleged ageist comments over the phone, and to lay the foundation for Defendant to terminate her. (*Id.* ¶¶ 38–40, 42–43.) Plaintiff alleges that the Final Warning contains various inaccuracies and falsehoods including a specious allegation that audits for April 2017 to 2018 were falsified. (*Id.* ¶¶ 39–40.) But Plaintiff claims that the audits were not "falsified," and instead, that "[a]ny errors that may have been made were not intentional," none of which were ever reported to her for more than a year despite regular one-on-one meetings from April 2017 through April 2018. (*Id.* ¶¶ 46–47.)

Plaintiff also alleges that the Final Warning inaccurately blamed her for losing a client, even though Defendant never provided her with a Client Change Report which would have explained why a client was terminating its business with Defendant. (*Id.* ¶ 44.) On July 24, 2018, during a conference call with Wilson, Foster, and HR, Plaintiff asked them the reason the client was terminating its business with Defendant, to which they replied that the client said was due to the mismanagement of their claims by Plaintiff's team. (*Id.* ¶ 45.) Plaintiff asked Foster to see what the client had submitted in writing, but he replied that such explanation was the only thing the Account Broker had relayed. (*Id.*) Plaintiff claims she never received any confirmation. (*Id.*)

F.    *Plaintiff makes a verbal complaint to the Ethics Hotline due to the Final Warning and PAP*

On August 24, 2018, Plaintiff made a verbal complaint to the Ethics Hotline in which she reported the unjustified Final Warning and PAP and her suspicion that these actions were retaliation for her reports to HR regarding Foster's age-based comments. (*Id.* ¶ 48.) Plaintiff made several inquiries to the Ethics Hotline regarding the status of her complaint, to which she was advised that it was still under review. (*Id.*) Plaintiff claims she never received any notice of the final outcome. (*Id.*) On September 13, 2018, Plaintiff successfully completed the PAP. (*Id.* ¶ 49.)

G.    *Defendant terminates Plaintiff's employment*

On January 7, 2019, Defendant terminated Plaintiff's employment. (*Id.* ¶ 50.) Defendant informed Plaintiff that she was being terminated because of a "debacle" in which an examiner on Plaintiff's team was not reporting certain leave for a particular client as delineated in that client's policies with Defendant, which Plaintiff had not caught or corrected. (*Id.* ¶ 51.) Plaintiff disputes whether the alleged error was made, contends that even if it was made, there was no damage to the client that could not have easily been corrected, and alleges that her termination was "not consistent with [Defendant's] policy, which had been to explain the financial damages to the client, when such damages occurred." (*Id.* ¶¶ 51–53.) Plaintiff claims that she was later replaced by a younger person. (*Id.* ¶ 56.)

## II.    Procedural Background

On January 4, 2019, Plaintiff filed a discrimination complaint for her claims with the New York State Division of Human Rights ("SDHR"), alleging that Defendant violated the NYSHRL. (*Id.* ¶ 11.) On February 11, 2019, she filed an Amended Employment Complaint, after which she received an Annulment by letter, dated February 15, 2019. (*Id.*) Plaintiff also simultaneously made these same filings with the Equal Employment Opportunity Commission ("EEOC"), which issued

her a Notice of Right to Sue, dated September 30, 2019, that Plaintiff received on October 2, 2019. (*Id.* ¶ 12.)

Proceeding *pro se*, Plaintiff commenced the instant lawsuit on December 26, 2019. (Compl., ECF No. 1.) After waiving service of process (ECF No. 4), Defendant sought leave to file a motion to dismiss (ECF No. 6). The Court granted Defendant leave to file its first motion to dismiss and issued a briefing schedule (ECF No. 9). After the parties filed their motion papers, the Court issued an opinion and order granting Defendant's motion to dismiss and dismissing Plaintiff's original Complaint without prejudice with leave to amend. (ECF No. 15.)

On October 15, 2021, Plaintiff filed her Amended Complaint. (Am. Compl., ECF No. 16.) After it once again sought leave to file a motion to dismiss, the Court granted Defendant leave and issued a briefing schedule. (ECF Nos. 17 & 18.) On February 25, 2022, the parties filed their respective briefing on the instant motion: Defendant its notice of motion (ECF No. 25), memorandum in support ("Motion," ECF No. 27), a declaration with accompanying exhibits ("Corsano Declaration," ECF No. 26), and reply ("Reply," ECF No. 29); and Plaintiff her response in opposition ("Response in Opposition," ECF No. 28).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when the factual content pleaded allows a court "to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. That said, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted). When a plaintiff proceeds *pro se*, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a *pro se* litigant attaches to his opposition papers, statements by the plaintiff submitted in response to a defendant's request for a pre-motion conference, and documents that the plaintiff either possessed or knew about and upon which he or she relied in bringing the suit." *Gayot v. Perez*, No. 16-CV-8871 (KMK), 2018 WL 6725331, at *4 (S.D.N.Y. Dec. 21, 2018) (internal quotation marks, alterations, and citations omitted). In other words, the Court may "consider factual allegations made by a pro se party in [her] papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

A court must read a *pro se* complaint liberally, interpreting it "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010). A motion to dismiss a *pro se* complaint should only be granted if the complaint raises no plausible right to relief under any set of facts the plaintiff could plausibly prove. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nonetheless, a *pro se* plaintiff's complaint must plausibly set out entitlement to relief with sufficient factual allegations. *Jackson v. NYS Dept. of Lab.*, 709 F. Supp. 2d 218, 223

(S.D.N.Y. 2010). A court liberally construing a *pro se* complaint is not required to re-write it or ignore the lack of an element essential to an entitlement to relief. *Geldzahler v. N.Y. Medical Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

Liberally construed, Plaintiff's Amended Complaint asserts a total of four causes of action against Defendant: two claims under the ADEA—one for age-based discrimination (over 40 years old) and one for retaliation (for opposing age discrimination)—and the two respective equivalent claims under the NYSHRL. (Am. Compl. at 11–14.) By its motion, Defendant generally contends that the Court should dismiss Plaintiff's claims for failure to state a claim, as her allegations are insufficient, conclusory, and lack necessary support. (Mot. at 14–30.) The Court addresses the merits of Defendant's arguments by first addressing Plaintiff's federal and state claims for discrimination based on age and then those for retaliation.

## I.  Discrimination Claims Based on Age

Defendant first argues that Plaintiff's age-based discrimination claims in her Amended Complaint fail for the same reasons the analogous claims in her original Complaint failed. Namely, Defendant argues that none of the alleged circumstances surrounding the purported adverse employment actions raise a plausible inference of discrimination against Plaintiff based on her age. (Mot. at 16–21.) The Court agrees.

### A.  *Legal Standards*

Under the ADEA, it is unlawful for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age" 29 U.S.C. § 623(a)(1). The ADEA covers individuals that are at least forty years old. *Id.* The NYSHRL also provides that it is "an unlawful discriminatory practice" for an employer "to discriminate against such individual in compensation or in terms, conditions or privileges of

employment" based on an individual's sex or age, among other characteristics. N.Y. State Exec. Law § 296(1)(a).

Courts analyze claims based on circumstantial evidence brought under the ADEA and the NYSHRL under the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105–06 (2d Cir. 2010) (applying framework to ADEA and NYSHRL claims based on age discrimination).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case. 411 U.S. at 802. To establish a *prima facie* case of age discrimination, a plaintiff must demonstrate that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). The plaintiff's burden at this stage is "minimal" or "*de minimis*." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (describing burden for discrimination claims); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (describing burden for retaliation claims).

Because this is a motion to dismiss, the Court need determine only "whether the allegations in the complaint give plausible support to the reduced *prima facie* requirements that arise . . . in the initial phase of a litigation." *Dressler v. City Sch. Dist. of N.Y.C.*, No. 15 Civ. 3696, 2016 WL 4367967, at *3 (S.D.N.Y. Aug. 15, 2016) (alteration in original) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

B.    *Application*

As a preliminary matter, the Court notes that liberally construed, the Amended Complaint

seems to allege four adverse employment actions by Defendant against Plaintiff: (1) denying her

a promotion by choosing other younger candidates; (2) placing her on a PAP; (3) issuing her a

Final Warning; and (4) terminating her employment. However, an "adverse employment action"

requires that, as a consequence, an employee experience a "materially adverse" change in the terms

of her employment:

> To be materially adverse, a change in working conditions must be more disruptive
> than a mere inconvenience or an alteration of job responsibilities. Examples of such
> a change include termination of employment, a demotion evidenced by a decrease
> in wage or salary, a less distinguished title, a material loss of benefits, significantly
> diminished material responsibilities, or other indices . . . unique to a particular
> situation.

*E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 843 (S.D.N.Y. 2013) (quoting *Sanders v. N.Y.C.*

*Human Resources Administration*, 361 F.3d 749, 755 (2d Cir. 2004)).

To this end, even when liberally construed in Plaintiff's favor, the Amended Complaint

contains no allegations that, as a result of either being placed on the PAP or receiving the Final

Warning, Plaintiff suffered any "a change in working conditions [that were] more disruptive than

a mere inconvenience or an alteration of [her] job responsibilities" prior to her termination.

*Bloomberg L.P.*, 967 F. Supp. 2d at 843 (quoting *Sanders*, 361 F.3d at 755)). It is not as if Plaintiff

alleged that Defendant subsequently subjected her to excessive scrutiny, monitoring,

micromanaging, or overloaded her with work. *Compare Sesay–Harrell v. NYC Dep't of Homeless*

*Servs.*, No. 12–CV–925, 2013 WL 6244158, at *15 (S.D.N.Y. Dec. 2, 2013) (disciplinary

measures and supervisory inaction not adverse employment actions), *with Costello v. N.Y.S.*

*Nurses Ass'n*, 783 F. Supp. 2d 656, 677–78 (S.D.N.Y. 2011) (finding that Plaintiff's alleged

actions qualified as adverse employment actions, including "giving negative performance

evaluations; micromanaging her schedule and denying her a work-at-home day; attempting to

overload her to cause her to be deficient in her job performance; failing to provide her with

necessary information and/or support, thereby setting her up to fail and engaging in conduct designed to result in discipline; and inundating her with emails and questions regarding her work performance" (alteration, citation and internal quotation marks omitted)).

Instead, Plaintiff alleges that "the Final Warning and PAP . . . enable[d] [Defendant] to terminate [her] easily[.]" (Am. Compl. ¶ 43.) In other words, Plaintiff alleges that the ultimate "change in working conditions" resulting from Defendant placing her on the PAP and issuing her a Final Warning was her employment termination on January 7, 2019. As such, after merging the alleged second and third adverse employment actions with the fourth, the Court will analyze Plaintiff's claims based only on two adverse employment actions: (1) Defendant denying Plaintiff a promotion by choosing other younger candidates; and (2) Defendant terminating Plaintiff's employment. *See, e.g.*, *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 524 (S.D.N.Y. 2015) (citing *Brown v. Am. Golf Corp.*, 99 F. App'x. 341, 343 (2d Cir. 2004) (summary order) (finding an employee's placement on an employment improvement plan insufficient to constitute an adverse employment action)); *Hill v. Rayboy–Brauestein*, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) ("Negative reports or evaluations alone are generally not adverse employment actions . . . .") (quoting *Hawana v. City of New York*, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002)).

With that in mind, even when drawing all inferences in her favor, Plaintiff still fails to allege how any of the circumstances surrounding those two adverse employment actions raises a plausible inference of discrimination. In fact, Defendant correctly points out that the relevant allegations in the Amended Complaint fail for the same reasons the relevant allegations in the original Complaint failed.

"First, Foster's allegedly ageist comment about Toranzo on September 28, 2017[,] is too distant in time from the alleged adverse actions that occurred at least five months afterwards."

*Scott-Monck v. Matrix Absence Mgt., Inc.*, 19-CV-11798 (NSR), 2021 WL 4198242, at *5 (S.D.N.Y. Sept. 14, 2021). This is particularly true because Plaintiff alleges that she was not selected for the Operations Manager position in "spring 2018," and that she was terminated in January 2019.

Thus, Plaintiff's relevant allegations are insufficient as a matter of law to plausibly support an inference of discrimination because the adverse employment actions here occurred five to sixteen months after the relevant statements. *See, e.g.*, *Sethi v. Narod*, 12 F. Supp. 3d 505, 540 (E.D.N.Y. 2014) ("District courts in this Circuit have found that a three-month lapse between alleged discriminatory statements and an adverse employee action is too long a gap to find the remark probative of discrimination."); *compare Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("Comments about another employee's age, removed from any context suggesting that they influenced decisions regarding [a plaintiff's] own employment, do not suffice to create a genuine issue of fact as to whether age was the but-for cause of [his] termination."), *with Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (holding that boss's comment to the plaintiff six week prior to plaintiff's termination—"Burt, you're 71 years of age, how long do you expect to work? What if you're hit by a bus?"—established *prima face* case because comment referenced plaintiff's "age in the context of disputing his claimed job duties").

"Second, the alleged circumstances regarding a third party's termination (*i.e.*, Toranzo's) do[] not [by themselves] raise a plausible inference that Plaintiff suffered adverse actions because of her age." *Scott-Monck*, 2021 WL 4198242, at *5; *see also Gertskis v. New York City Dep't of Health & Mental Hygiene*, No. 07 CIV. 2235 (TPG), 2008 WL 4449285, at *1 (S.D.N.Y. Sept. 29, 2008) ("The allegation of what was said by another employee as to discrimination by Wright—

12

an unsubstantiated, double-hearsay accusation—does not suffice to create a plausible inference of discriminatory intent." (internal quotation marks omitted)).

And "[t]hird, even assuming that Foster was the relevant decisionmaker for both the failure to promote and termination, insofar as Plaintiff alleges that [Defendant] promoted younger applicants over her or that she was replaced by someone younger, such a cursory allegation, standing alone, is insufficient to give rise to an inference of discrimination." *Scott-Monck*, 2021 WL 4198242, at *5 (citing *Nance v. City of New York*, No. 09-CV-2786 ENV VVP, 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011) ("an allegation that plaintiff was replaced by a younger employee is not sufficient, without more, to survive a motion to dismiss")).

Indeed, the Amended Complaint contains no allegations regarding how Plaintiff was "similarly situated in all material respects" to the other younger applicants so that she can sufficiently allege disparate treatment based on age. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). Most notably, not only does Plaintiff allege that the other three applicants were all over the age of forty, for which they would all be covered under the same protected class as Plaintiff under the ADEA (*see* Am. Compl. ¶ 32), but Plaintiff also fails to allege whether she was either better or equally qualified as those other three applicants. *See, e.g.*, *Meyer v. McDonald*, 241 F. Supp. 3d 379, 391 (E.D.N.Y. 2017) ("An inference *against* discrimination is appropriate when the individual hired to replace plaintiff alleging discrimination is within the same protected class as plaintiff." (emphasis added)), *aff'd sub nom. Meyer v. Shulkin*, 722 F. App'x 26 (2d Cir. 2018); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x. 115, 117 (2d Cir. 2010) (affirming summary judgment in favor of defendant employer and finding no inference of discrimination where an African American female plaintiff who alleged termination based on race was replaced by another

African American female). Plaintiff's response in opposition fares no better. (*See, e.g.*, Resp. in Opp'n at 5 (alleging that after her termination, nine employees in their thirties were promoted to unspecified "Supervisor" positions).

Instead, both the Amended Complaint and Plaintiff's response in opposition only contain cursory allegations that she was "by far the oldest applicant" and that she was "more than qualified" for the Operations Manager position. (*See* Am. Compl. ¶¶ 30, 32; Resp. in Opp'n at 2–4 (discussing her performance of the three years prior to her termination and outlining her work experience and qualifications).)

Accordingly, the Court dismisses Plaintiff's age-based discrimination claims under the ADEA and the NYSHRL.

## II.    Retaliation

Defendant next argues that, like the analogous claims in her original Complaint, Plaintiff's retaliation claims in her Amended Complaint fail because she fails to allege any causal connection between her alleged protect activity and the alleged adverse employment actions. (Mot. at 27–30.) Defendant argues that, in fact, Plaintiff herself admits that at the time of her termination, her job performance had been unsatisfactory. (*Id.* at 29–30.) The Court agrees.

### A.    Legal Standards

The ADEA and the NYSHRL protect "the filing of formal charges of discrimination . . . as well informal protests of discriminatory employment practices." *Littlejohn*, 795 F.3d at 317 (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). To make out a *prima facie* case of retaliation, a plaintiff must establish "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks omitted). "Protected activity is action

taken to protest or oppose statutorily prohibited discrimination." *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (internal quotation marks omitted).

> B.   Application

As noted above, liberally construing the Amended Complaint, Plaintiff alleges two adverse employment actions by Defendants: (1) denying her a promotion by choosing other younger candidates; and (2) terminating her employment. Further, liberally construing the Amended Complaint, Plaintiff alleges that she engaged in two protected activities: (i) speaking with HR about Foster's alleged ageist comment about Toranzo; and (ii) calling the Ethics Hotline to report that the Final Warning and PAP were unjustified. But even when drawing all inferences in her favor, like the original Complaint, the Amended Complaint still fails to sufficiently state any retaliation claim for any of Plaintiff's alleged protected activities.

"As to the call to the [E]thics [H]otline, Plaintiff does not allege that anyone involved in the termination decision was aware of this report." *Scott-Monck*, 2021 WL 4198242, at *6 (citing *Watkins v. First Student, Inc.*, 17-CV-1519 (CS), 2018 WL 1135480, at * 15 (S.D.N.Y. Feb. 28, 2018) (dismissing complaint because plaintiff "fail[ed] to allege that Defendant knew of her EEOC complaint, and if so, when"); *Belizaire v. RAV Invest. and Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 351-52 (S.D.N.Y. 2014) ("To constitute protected activity, the plaintiff's conduct must have put the employer on notice that the plaintiff believed that discrimination was occurring.") (internal quotation marks omitted). And "[w]hile Plaintiff alleges that Foster was aware that she reported his allegedly ageist comment in September 2017 to HR because he disputed it, as stated above, she [still] fails to plausibly allege a nexus between this protected activity and any of the adverse actions." *Scott-Monck*, 2021 WL 4198242, at *6. For instance, once again, "Plaintiff does not specify when the conversations with HR took place." *Id.*

To be sure, unlike in her original Complaint, Plaintiffs now does specify in her opposition papers that she was denied the Operations Manager position on April 23, 2018. (Resp. in Opp'n at 4.) Nonetheless, even when taking such allegation as true and drawing all inferences in Plaintiff's favor, several months (at least more than two or three) passed between Plaintiff's interview with HR—presumably within the last four months of 2017—and the April 23, 2018 denial. Such temporal connection, by itself, is insufficient to raise an inference of causation. *See, e.g.*, *Williams v. City of New York*, No. 11 Civ. 9679(CM), 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012) ("The passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged."); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (noting that courts "have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation").

Similarly, Plaintiff herself alleges that Defendant issued her the Final Warning and the PAP in July 2018, and that Defendant terminated her employment in January 2019. (*See* Am. Compl. ¶¶ 47, 50.) "In other words, [not only did] a number of months passed between Plaintiff's overhearing and presumably reporting to HR Foster's allegedly ageist comment, [but also] the better part of a year passed before she was put on the PAP, and she was not terminated until months after that point." *Scott-Monck*, 2021 WL 4198242, at *6. Hence, the Court is of the view that Plaintiff still fails "to plead facts from which the Court can infer retaliatory motive" with respect to her retaliation claims. *See Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) ("The time lapses between Brown's protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish that the alleged adverse

employment actions were the product of a retaliatory motive absent other supporting factual allegations.").

Accordingly, the Court dismisses Plaintiff's retaliation claims under the ADEA and the NYSHRL.

## III.   Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the benefit of a pre-motion letter from Defendant stating the grounds on which they would move to dismiss, as well as the Court's previous opinion and order detailing the deficiencies in her original Complaint. (ECF Nos. 15 & 18.) Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim.*") (alteration, footnote, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a

17

procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, Plaintiff has not otherwise suggested that she is in possession of facts that would cure the deficiencies that Defendant highlighted in the instant motion and the Court highlighted in this opinion—which in fact, were the exact same as those present in her original Complaint. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend). Accordingly, the Court dismisses the Amended Complaint with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss (ECF No. 25) and DISMISSES Plaintiff's Amended Complaint with prejudice. The Clerk of Court is directed to terminate the motion at ECF No. 25 and this action, to enter judgment accordingly, and to close the case. The Clerk of the Court is further directed to mail a copy of this Opinion and Order to *pro se* Plaintiff at her address listed on ECF and show service on the docket.

Dated: July 22, 2022
       White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge